**Application of KRASNOW et al.**

**Patent Appeal No. 5376.**

Court of Customs and Patent Appeals.

Feb. 10, 1948.

Shelley Krasnow, pro se.

W. W. Cochran, of Washington, D. C. (H. S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

JACKSON, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming that of the Primary Examiner, rejecting claims 4, 5, 7, 11, 12, 13, 21, and 22 of appellants' application, serial No. 433,212, for a patent, filed March 3, 1942, for a new and useful improvement in Radiant Energy Activation. Three claims were allowed.

The claims were rejected by the Primary Examiner for want of patentability over the following references. Bender 2,133,776 October 18, 1938. Hassler 2,197,453 April 16, 1940. Buckley 2,220,205 November 5, 1940. Brons 2,220,509 November 5, 1940. Ennis 2,228,623 January 14, 1941. Fearon 2,308,361 January 12, 1943. Neufeld 2,320,643 June 1, 1943. Albertson 2,339,129 January 11, 1944.

In the interest of clarity we deem it proper to quote all of the rejected claims. They read as follows:

"4. In a method of conducting operations within a deep borehole, the steps of fixing within the walls of the borehole a radioactive material, so that the said radioactive material is definitely associated with a given locality and emits radioactive rays at that locality, of conducting radioactive measurements at various points proximate to the desired point, and of noting the locality at which the radioactivity due to the fixed radioactive material is pronounced, thereby locating the said locality definitely.

"5. In a method of indicating desired localities within a borehole, the steps of fixing radioactive material within the walls of the borehole so that the said material will send radioactive rays into the borehole at the desired localities, of receiving radioactive rays due to the said material, and noting the locality at which the effect is most pronounced, thereby locating the desired locality definitely.

"7. In a method of conducting operations within a deep narrow borehole, the steps of introducing radioactive material into the borehole, of causing a change with-

in the borehole so that rays emitted at a certain level will be different than before the introduction of the radioactive material, of making a measurement of depth to a point within the borehole at which the radioactive conditions have been altered, thereby obtaining information as to conditions at that depth.

"11. In a method of investigating material existing within the boreholes, the steps of introducing radioactive material into the said borehole and proximate to the point to be investigated, of allowing the radioactive material to act upon the material in the borehole, and to bestow as a consequence upon the said material, an additional radioactive property, of placing an apparatus responsive to radioactivity within the borehole proximate to the point at which the material is to be investigated, and of obtaining a response due to the additional radioactive property, thereby furnishing an indication of the nature and location of the material.

"12. In a method of marking formations within a borehole for subsequent identification, the steps of introducing into the borehole one of the radioactive decomposition products of radium, of applying the said material to selected portions of the borehole whereby the said substance will be retained therein and later identifying the said formation by the radioactive rays given off by the retained radium decomposition product.

"13. In a method of investigating conditions within a deep narrow borehole, the steps of introducing radioactive material within a borehole, of causing the said material to move along the length of the borehole so that it may act upon the different levels thereof, thereby causing in the materials lining the borehole an augmented radioactivity dependant upon the reaction between the radioactive material and the material lining the borehole, of making measurements of radioactivity along the length of the borehole and identifying localities where the radioactivity has acted upon the material of the borehole.

"21. In a method of conducting geological explorations within a borehole in which substances with different responses

to radioactive materials exist, whereby certain of said substances when exposed to radioactive material will respond in greater proportion than other of said substances and will exhibit a stronger radioactivity as a consequence thereof, the steps of introducing radioactive material within the borehole at different localities thereof and exposed to the said substances, whereby the substances with greater response to the radioactive material will respond in greater proportion and exhibit a stronger radioactivity as a consequence thereof, of lowering a radioactive detecting instrument within the said borehole and proximate to the said substances, whereby the substances exhibiting a stronger radioactivity will be identified with certainty.

"22. In a method of conducting geological explorations within a borehole in which a stratum with a limited radioactivity exists whereby the presence of the said stratum is detected with difficulty by radioactive means, the steps of introducing a radioactive substance within the borehole proximate to the said stratum, of exposing the said stratum to the said radioactive substance, whereby the said stratum will exhibit a stronger radioactivity than before, and of lowering a detecting apparatus proximate to the said stratum to detect the presence thereof."

The invention relates to a method and apparatus for measuring radioactivity with particular reference to the measuring of such activity in inaccessible locations, such as in the boreholes of oil wells.

Claims 4, 5, 11, and 12 were rejected by the Primary Examiner as unpatentable over any one of the Buckley, Ennis, Neufeld, or Albertson references. Claims 7, 13, 21, and 22 were rejected under any one of the Bender, Brons, or Fearon patents. Claim 7 was further rejected as unpatentable over the Neufeld or Albertson patents. Claims 12, 13, 21, and 22 were further rejected by the examiner as being indefinite.

The Board of Appeals in affirming the decision of the examiner added the further rejection that the appealed claims are so broad as to be ambiguous.

Appellants contend that their prior application, serial No. 137,380, filed April 16, 1937, which date is prior to the effective date of the cited references, disclosed, as originally filed, the subject matter of the rejected claims, and that, therefore, none of the cited art is pertinent. They further contend that the patent to Bender is inoperative, and, therefore, ineffective as a reference, and that the patent to Ennis may not be used because of a prior interference proceeding.

■ It is not necessary to discuss the disclosure of any of the references for the reason that, if on the one hand, appellants' contention that the subject matter of the appealed claims is disclosed in the earlier application, serial No. 137,380, it is conceded by the solicitor that the references are ineffective, and, on the other hand, should we agree with the holding of the board that the appealed claims are entitled only to the date of the involved application, then we must affirm the rejection on the prior art, for the reason that it has not been argued in appellants' brief that claims 7, 13, 21, and 22 are patentable over the Brons or the Fearon patents, nor is it there argued that claims 4, 5, 11, and 12 are patentable over the patents to Neufeld or Albertson. While in their notice of appeal the proper reasons of appeal were assigned to the board's holding in respect to those patents, those reasons may not be relied upon because they were not discussed in the brief and are assumed to be abandoned here. In re McCabe, 90 F.2d 111, 24 C.C.P.A.,Patents, 1224. The board in its decision stated that with the exception of the patents to Ennis and Bender, appellees did not discuss the merits of the other references.

The major issues to be decided here are whether or not appellants' application, serial No. 137,380, as originally filed in the Patent Office, teaches the subject matter of the invention, and whether the rejected claims are definite, proper, and read upon the disclosure of that application. Both appellants and the solicitor agree that those are the issues determinative of the appeal. The part of that application alleged to disclose the subject matter defined in the

rejected claims reads as follows: "In certain localities, petroleum in particular may be found to have a limited radioactivity; so limited that detecting its presence with the apparatus shown becomes difficult. In these cases advantage may be taken of the superior absorptive power of petroleum for radium emanation. Radium emanation may be introduced at the surface of the borehole, being pumped into it so as to reach the lowest level. The bore-hole may then be cleaned out with a suitable fluid, such as water, and a test made for radioactivity in the manner described previously. It will be seen that if any petroleum exists in the bore-hole, it will absorb radium emanation in greater proportion than the other strata, and will therefore exhibit a stronger radioactivity."

█ The board was of opinion that the above quotation was "cryptic and too incomplete to teach the subject matter of the appealed claims." The board properly observed that the rejected claims should be closely scrutinized for the reason that allowance of claims, based on sketchy disclosures, would open the door to attack on intervening patents having clear disclosures and claims.

In holding that the rejected claims are so broad as to be ambiguous, the board stated that " 'Fixing—a material,' in claims 4 and 5; 'introducing—material—proximate to' in claims 11 and 22; 'introducing—at different localities—' in claim 21; 'applying—to selected portions' in claim 12; 'causing a change—so that rays emitted will be different', in claim 7, and 'the reaction between the radioactive material and the material lining the bore hole' in claim 13, * * * do not recite steps but are directed towards results not mentioned."

█ We agree with the holding of the board that the steps of fixing radioactivity material within the walls of the borehole, as set out in claims 4 and 5, are not sufficiently disclosed in said prior application. It is obvious, we think, that the quoted disclosure of that application does not in any way indicate that radioactive material is fixed within the borehole. Neither do we find any disclosure that radioactive mat-

erial is applied to "selected portions of the borehole", as called for in claim 12. With respect to claim 21, it is clear that the earlier application does not disclose the introduction of radioactive material at different localities in the borehole. Therefore, we are of opinion that the decision of the board with respect to claims 4, 5, 12, and 21 should be affirmed.

█ The steps defined in claims 7, 11, 13, and 22, we think, are sufficiently disclosed in the earlier application to warrant their allowance. Each of those claims calls for the introduction of radioactive material within the borehole, and, of course, such introduction of that material reasonably must be held to extend to the bottom of the hole. In claim 7, the expression, "of causing a change within the borehole so that rays emitted at a certain level will be different than before the introduction of the radioactive material," can mean nothing else, as we see it, than as is disclosed in appellants' earlier application, that the radioactive material is absorbed in the stratum containing petroleum to a greater extent than in other strata, and, therefore, the rays emitted from that stratum will be stronger and different than they were before the introduction of the radioactive material. It is the introduction of radioactive material into the borehole that causes such change, and this, we think, is clearly disclosed.

With respect to claim 11, the step of "introducing radioactive material into the said borehole and proximate to the point to be investigated, of allowing the radioactive material to act upon the material in the borehole, and to bestow as a consequence upon the said material, an additional radioactive property," we think is properly disclosed. Certainly, "the point to be investigated" is the stratum wherein petroleum is thought to exist, and in introducing the radioactive material into the borehole, it is plain, according to our understanding, that such material would fill the borehole and of necessity be proximate to the stratum or strata containing petroleum, and because, where petroleum exists, it will absorb the radioactive material in greater quantity than the other strata, it will result in addi-

tional radioactivity emanations from the petroleum bearing strata.

We do not agree with the board that the statement in claim 13, "thereby causing in the material lining the borehole an augmented radioactivity, dependent upon the reaction between the radioactive material and the material lining the borehole," expresses results not mentioned in the appellants' earlier application. In that claim it is set out that the radioactive material fills the borehole so that it may act upon the different strata therein. It is disclosed in appellants' earlier application that petroleum seems to have a greater affinity for radium emanation (a heavy inert radioactive gas) than substances found in other strata. Because of that disclosure, it appears that there is augmented radioactivity affecting in various degrees the different strata, the difference depending upon the varying absorptive properties of the different strata. This seems to us to describe the effect of the radium emanation, so that localities within the borehole may be properly measured by reason of the different emissions of radioactivity there present. Therefore, it seems to us that the disclosure relied upon by appellants is sufficient to justify allowance of claim 13.

We are not in agreement with the board that the expression contained in claim 22, "introducing a radioactive substance within the borehole proximate to the said stratum," is not disclosed in the earlier application. In that claim the said stratum is defined to be "a stratum with a limited radioactivity." The application relied upon by appellants sets out specifically that petroleum may have such a limited radioactivity that the detection of its presence with appellants' apparatus becomes difficult. The stratum containing petroleum is cut through by the borehole. The radium emanation, to be of any effect at all, must be introduced throughout the entire area of the borehole and of necessity must be proximate to said stratum. We are of opinion that claims 7, 11, 13 and 22 should be allowed for the reason that their limitations are sufficiently disclosed, as contended by appellants in their earlier application. We further hold that those claims are neither indefinite nor ambiguous.

For the reason herein stated, the decision of the board is reversed with respect to claims 7, 11, 13, and 22, and affirmed with respect to claims 4, 5, 12, and 21.

Modified.

BLAND, Associate Judge, sat during the arguments of this case, but resigned before the opinion was prepared.